

### UNITED STATES BANKRUPTCY COURT

### SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION

www.flsb.uscourts.gov

**In re:**                                                    Case No. 25-24251-SMG

Chapter 7

**SAMI ITSHAIK,**

Debtor.

_____/

### OPPOSITION OF SHAUN ITSHAIK, AS SUCCESSOR TRUSTEE AND BENEFICIARY OF THE 1052 EAST 57TH STREET TRUST AND THE 1138 EAST 57TH STREET TRUST, TO THE TRUSTEE'S MOTION TO APPROVE CARVEOUT AGREEMENT WITH VALLEY NATIONAL BANK [DKT. NO. 76]

Shaun Itshaik, appearing pro se as Successor Trustee and Beneficiary of the 1052 East 57th Street Trust and the 1138 East 57th Street Trust (the "Successor Trustee"), files this opposition to the Chapter 7 Trustee's Motion to Approve Carveout Agreement with Valley National Bank [Dkt. No. 76] (the "Carveout Motion"), and states:

### OPENING STATEMENT

1. This motion should be denied. The Trustee seeks to sell property that is not property of the estate, on behalf of a creditor whose pre-petition conduct and this-Court representations are the subject of an active fraud-upon-the-court record, and he asks this Court to approve the sale before his own title search is complete, without disclosing three pending state appeals, and without service on the successor trustees and beneficiaries identified in the trust instruments he already holds.

2. The Debtor's bankruptcy schedules state the Brooklyn Properties are "on my name but not mine." The Trustee quotes that admission in his own filing. [Dkt. No. 53, ¶ 5.]

3. The properties belong to two irrevocable trusts created in 2003 by Esther Itshaik, then the sole owner of the Brooklyn Properties, for the benefit of her children. The Debtor was never the beneficial owner. He resigned as trustee on December 31, 2020, and later swore under oath that he "is no longer the trustee for the subject trusts." Record title currently stands in the Debtor's name only because a May 7, 2025 state court judgment, entered without serving the Trusts' beneficiaries

and now on direct appeal for that failure, forced it back. Beneficial ownership remains with the Trusts. Under 11 U.S.C. § 541(d), bare legal title without equitable interest is not property of the estate.

4. The Trustee moves forward anyway. The procedural posture matters.

5. On March 20, 2026, the Trustee filed his Response in Opposition to the Emergency Motion to Dismiss [Dkt. No. 53]. In paragraph 8 of that Response, he expressly disclosed that he and Valley National Bank "are in the process of negotiating a carveout to the estate." The same day, Valley National Bank filed a Joinder [Dkt. No. 54] alleging "fraudulent conveyances" by the Debtor and representing to this Court that bankruptcy jurisdiction was the only path to creditor recovery.

6. The Successor Trustee then filed a Reply to that Joinder. The Reply attached Valley National Bank's own broker closing statements. Those documents establish that Valley National Bank itself collected $884,720 from the pre-petition liquidation of eight of the Debtor's taxi medallions, including two sold sixty-eight days before the petition. The Reply further established that Valley National Bank had concealed those collections from this Court at the February 18, 2026 reinstatement hearing and had made affirmative representations directly contradicted by its own records.

7. The Trustee read that Reply. The ordinary response of a neutral fiduciary, confronted with documentary proof that his negotiating counterparty had misled this Court and concealed nearly a million dollars of pre-petition collections, is to slow down. To verify the lien. To evaluate preference exposure under 11 U.S.C. § 547(b) on the September 25, 2025 transfers. To reassess whether a carveout with that counterparty serves the estate at all.

8. The Trustee did the opposite. On April 14, 2026, twenty-five days after the Reply placed Valley National Bank's pre-petition conduct on the docket, the Trustee filed the present Carveout Motion.

9. He filed it before his title search was complete. He filed it without disclosing any of the three pending appeals that could extinguish Valley National Bank's secured position. He filed it without serving the named successor trustees or beneficiaries. And he filed it for a sale that, on his own concession, will not pay one dollar to any unsecured creditor. [Dkt. No. 76, ¶ 11.]

10. He also filed it in tandem with a separate motion for sanctions directed at the Debtor personally. The Debtor is an eighty-one-year-old man with physician-documented bilateral hippocampal infarctions. The Trustee himself agreed to waive that Debtor's appearance only

weeks earlier, on precisely that incapacity ground. [Dkt. No. 53, ¶¶ 18–19.] A fiduciary cannot excuse a person from the proceeding on incapacity grounds in March and move for sanctions against that same person in April.

11. Every material fact surrounding the Trustee's conduct of this motion points one way. None supports approval. The motion should be denied.

## BACKGROUND

### A. The Brooklyn Properties and the Trusts

12. This case concerns two Brooklyn properties: 1052 East 57th Street and 1138 East 57th Street (the "Brooklyn Properties").

13. The Brooklyn Properties have a combined appraisal value of $1,620,000. [Dkt. No. 53, ¶ 5.]

14. On November 24, 2003, Esther Itshaik, then the sole owner of the Brooklyn Properties, created two irrevocable trusts: the 1052 East 57th Street Trust and the 1138 East 57th Street Trust (together, the "Trusts"). As grantor, she funded the Trusts with her own properties for the benefit of her children. Esther Itshaik died in 2007, survived by her husband, the Debtor in this case, and their several children, who are the Trust beneficiaries identified in Article VI. The Brooklyn Properties have belonged to the Trusts since 2003; the Debtor was never the beneficial owner of these properties.

15. Article VI of the Trusts names the grantor's children, per stirpes, as the beneficiaries.

16. Article XIII, Section A of the Trusts identifies the successor trustees by name: Sharon/Shaun Itshaik (primary successor), followed by Amit Itshaik, Limor Kobilo, and Don Itshaik.

17. The original trustee named in the Trusts was Sami Itshaik, the Debtor in this case.

18. In May 2020, the Debtor recorded Correction Deeds (CFRN 2020000149459 and 2020000151538) conforming the record title of the Brooklyn Properties to the Trusts' underlying ownership established by Esther Itshaik in 2003.

### B. The Debtor's Resignation and Automatic Succession

19. On December 31, 2020, the Debtor resigned as trustee of both Trusts.

20. The resignation was memorialized in two notarized letters (one per trust), notarized by Christian Aguilera, Florida Notary Public.

21. Each resignation letter states: "I Sammy Itshaik resign my duties as trustee and relieve myself of all further liability for [1052/1138] East 57th Street Trust effective immediately."

22. The Trusts' succession clause is self-executing. Upon the Debtor's resignation, Sharon/Shaun Itshaik automatically became Successor Trustee. No court order was required.

23. As of December 31, 2020, Shaun Itshaik, as Successor Trustee, held legal title to the Brooklyn Properties. That title remained in the Successor Trustee until the May 7, 2025 state court judgment described below.

### C. The Debtor's Own Sworn Admission

24. On March 27, 2023, the Debtor swore an affidavit under penalty of perjury in *Valley National Bank v. Itshaik*, Index No. 514761/2022 (Sup. Ct. Kings County).

25. Paragraph 5 of that affidavit states: "I am no longer the trustee for the subject trusts."

26. The affidavit was filed as Exhibit S to Valley National Bank's summary judgment motion in that case on July 31, 2023, and is part of the public record.

### D. The Debtor's Bankruptcy Schedules

27. The Debtor filed this Chapter 7 case on December 2, 2025. [Dkt. No. 1.]

28. The Debtor's Schedule A/B discloses the Brooklyn Properties, but expressly states the properties are "on my name but not mine."

29. The Trustee acknowledges this admission in his own filing. Paragraph 5 of Dkt. No. 53 states: "The Debtor's schedules state the Brooklyn Properties are 'on my name but not mine.'"

### E. The May 7, 2025 Judgment and the Pending Appeals

30. On May 7, 2025, the Supreme Court of the State of New York, Kings County, entered a judgment in *Valley National Bank v. Itshaik* (Index No. 514761/2022) voiding the May 2020 Correction Deeds and thereby forcing record title to the Brooklyn Properties back into the Debtor's name, individually. [Dkt. No. 53, ¶ 6(c).]

31. That judgment was entered without serving the Trusts' beneficiaries or successor trustees. These parties were necessary parties under CPLR 1001.

32. Three appeals are currently pending before the Appellate Division, Second Department, in *Valley National Bank v. Sami Itshaik et al.*, each challenging the state court proceedings and the May 7, 2025 judgment: (a) Docket No. 2025-07305 (filed October 17, 2025); (b) Docket No. 2025-07309 (filed October 17, 2025); and (c) Docket No. 2025-13940 (filed November 21, 2025). [Exhibit E.]

33. The appeals seek vacatur of the May 7, 2025 judgment and remand for proper joinder of the beneficiaries under CPLR 1001. The judgment is not final.

34. The Trustee has not disclosed any of these three pending appeals in the Carveout Motion or in any other filing in this case, despite the fact that each appeal, if successful, would eliminate the legal foundation for the proposed carveout.

### F. The Trustee Was on Notice of Valley National Bank's Pre-Petition Conduct Before Filing the Carveout Motion

35. On March 20, 2026, the Trustee filed his Response in Opposition to the Emergency Motion to Dismiss [Dkt. No. 53]. Paragraph 8 of that Response states, in the Trustee's own words: "The Trustee and Valley National Bank are in the process of negotiating a carveout to the estate, subject to bankruptcy court approval."

36. On the same day, Valley National Bank filed a Joinder in the Trustee's Response [Dkt. No. 54], alleging that the Debtor had engaged in "fraudulent conveyances and other dilatory tactics" and representing that "the only way that creditors will ever see any recovery is by the continued jurisdiction of the Bankruptcy Court." [Dkt. No. 54, ¶¶ 1–2.]

37. Thereafter, the Successor Trustee (then appearing as Next Friend of the Debtor) filed a Reply to the Joinder, attaching as Exhibits A through G seven Seller's Closing Statements from Chelsea Taxi Brokers. Those closing statements establish, on their face, that between May 2023 and September 25, 2025, Valley National Bank collected $884,720 from the pre-petition sale of eight taxi medallions belonging to four of the Debtor's cab companies. Every closing statement lists Valley National Bank's own address, 1455 Valley Road, Wayne, New Jersey 07470, as the seller's address. Every sale was brokered through Chelsea Taxi Brokers. Every dollar of net proceeds was directed to Valley National Bank.

38. Three features of the Reply are independently material to the motion now before this Court. First, on three of the seven closing statements (Exhibits E, F, and G to the Reply), the loan-payoff line for Valley National Bank shows $0.00, notwithstanding that Valley National Bank collected $401,020 in net proceeds on those same transactions. Second, two of those transactions

(Exhibits F and G, each involving Tarzan Cab Corp.) closed on September 25, 2025, sixty-eight days before the petition date, squarely within the ninety-day preference window of 11 U.S.C. § 547(b). Third, the Reply demonstrated that at the February 18, 2026 reinstatement hearing, Valley National Bank's counsel represented to this Court that the Debtor's medallion assets had disappeared and that the Debtor had been "evading collection," when Valley National Bank's own files contained the broker closing statements documenting that Valley National Bank itself had liquidated those assets and collected the proceeds.

39. The Trustee had constructive, and very likely actual, notice of each of these facts no later than the filing date of the Reply, which preceded his filing of the Carveout Motion by approximately twenty-five days. The Reply is an ECF docket entry in this case. The Trustee's counterparty in the carveout negotiation is the same party whose pre-petition conduct and misrepresentations are the subject of the Reply.

## G. The Carveout Motion

40. On April 14, 2026, the Trustee filed the Carveout Motion. [Dkt. No. 76.]

41. Paragraph 10 of the Carveout Motion states: "The Trustee has ordered a title and lien search to determine if there are any other liens on the Brooklyn Properties." The title search was not complete when the motion was filed.

42. Paragraph 11 of the Carveout Motion states: "Absent a carveout, liquidation of the Brooklyn Properties would not yield any funds necessary to pay administrative expenses or a distribution to general unsecured creditors."

43. The Carveout Motion was served on Shaun Itshaik only in his capacity as "pro se Next Friend" of the Debtor. It was not served on him as Successor Trustee. It was not served on Amit Itshaik, Limor Kobilo, or Don Itshaik. It was not served on any beneficiary.

44. The Carveout Motion does not reference, acknowledge, or address Valley National Bank's pre-petition collection of $884,720, the potential preference exposure of the two September 25, 2025 transfers, the three pending appeals, or the Reply [Dkt. entry preceding Dkt. No. 76] in which those facts were placed on the record.

## H. The Trustee's Concurrent Sanctions Motion Against the Incapacitated Debtor

45. On March 20, 2026, the Trustee represented to this Court, in his own Response to the Emergency Motion to Dismiss, that "[t]o the extent the Court finds the Debtor is incompetent, the Trustee does not object to the Court waiving the debtor's appearance at the March 31, 2026

meeting of creditors and authorizing the Trustee to administer the estate's assets in the ordinary course." [Dkt. No. 53, ¶ 18.] The Trustee further did not object to waiver of the Debtor's compliance with the deficiencies cure requirements of the Reinstatement Order. [Dkt. No. 53, ¶ 19.]

46. Those concessions were predicated on, and only on, the physician-documented incapacity of the Debtor: the August 17, 2022 brain MRI documenting bilateral hippocampal infarctions, corroborated by Dr. David Neuman's January 6, 2026 letter confirming physician-diagnosed amnesia and moderate cognitive decline.

47. Notwithstanding those concessions, the Trustee has since pursued a separate motion for sanctions directed at the Debtor personally. A fiduciary who tells this Court in March that the Debtor cannot meaningfully participate in the proceeding, and therefore that his appearance and compliance obligations should be excused, cannot in April pursue sanctions against that same person for conduct he could not meaningfully direct. The two positions are not reconcilable as a matter of fiduciary duty, and they are not reconcilable as a matter of the Debtor's due process.

48. The posture of pursuing sanctions against an incapacitated person whose appearance has been waived on incapacity grounds, simultaneous with a carveout motion that produces nothing for any party other than the Trustee and his counsel, is consistent with only one objective: the elimination of opposition to the sale. That is harassment and intimidation of the only other party with real economic exposure in this estate, deployed in the service of a transaction whose sole beneficiaries are the Trustee and his professionals.

## ARGUMENT

### *I. The Brooklyn Properties Are Not Property of the Estate.*

49. Under 11 U.S.C. § 541(a), the bankruptcy estate includes all legal or equitable interests of the debtor in property as of the commencement of the case.

50. Section 541(d) excludes from the estate any property in which the debtor holds only bare legal title without an equitable interest.

51. The Debtor has no equitable interest in the Brooklyn Properties. His own schedules say so.

52. Record title was forced back into the Debtor's name by the May 7, 2025 state court judgment, but that judgment was entered without serving the Trusts' beneficiaries and is now on direct appeal for that failure (see ¶¶ 24–28, supra). Whatever the record shows, the Debtor holds at

most bare legal title. The equitable interest, the beneficial ownership, belongs to the Trusts, for the benefit of the grantor's children.

53. The Debtor's own sworn affidavit confirms: "I am no longer the trustee for the subject trusts."

54. Because the Debtor has no equitable interest in the Brooklyn Properties, they are not property of the estate. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'"); 11 U.S.C. § 541(d) (property in which the debtor holds only legal title and not an equitable interest "becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold").

55. The Trustee cannot administer, liquidate, or carve out property that is not part of the estate. And the same result follows even if the Trusts were disregarded. Esther Itshaik, sole owner of the properties in 2003, created the Trusts to pass the Brooklyn Properties to her children, not to her husband, the Debtor. If her Trusts were set aside, her estate would pass to her heirs, including the several children; the Debtor would not take as sole owner. There is no arrangement under which the Brooklyn Properties belong to the Debtor alone, and therefore no arrangement under which they are property of his bankruptcy estate. The Carveout Motion fails on this ground alone.

## *II. Necessary Parties Were Not Served.*

56. The Trusts expressly identify the successor trustees by name: Sharon/Shaun Itshaik, Amit Itshaik, Limor Kobilo, and Don Itshaik.

57. The Trusts expressly identify the beneficiaries: the grantor's children, in equal shares per stirpes.

58. These are identified necessary parties. Their rights are directly affected by any disposition of trust property.

59. Due process requires notice reasonably calculated to apprise interested parties of the pendency of the action. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

60. Service must also reach a party in the capacity in which that party is a party in interest. Shaun Itshaik was served only as Next Friend, not as Successor Trustee.

61. The Trustee had the trust documents. The Trustee had the names. The Trustee did not serve the necessary parties.

62. The Carveout Motion is defective for failure to serve necessary parties in their correct capacity.

### III. The Underlying State Court Judgment Is on Direct Appeal, and the Trustee Has Not Disclosed It.

63. The Carveout Motion rests on the premise that the May 7, 2025 Kings County judgment voided the Correction Deeds and restored Valley National Bank's secured position.

64. That judgment is on direct appeal before the Appellate Division, Second Department, in three pending proceedings: Docket Nos. 2025-07305, 2025-07309, and 2025-13940. [Exhibit E.]

65. The appeals challenge the state court proceedings on CPLR 1001 grounds. Necessary parties (the Trust beneficiaries) were not served in the state court action.

66. If the Appellate Division vacates the May 7, 2025 judgment, Valley National Bank's secured position collapses. The entire premise of the Carveout Motion disappears.

67. Under *Butner v. United States*, 440 U.S. 48, 55 (1979), property interests in a bankruptcy estate are "created and defined by state law." The pending state appellate proceedings will determine whether title to the Brooklyn Properties is held by the Trusts or, as the Trustee assumes, subject to Valley National Bank's asserted lien. This Court is empowered to abstain in the interest of comity with state courts. *See* 28 U.S.C. § 1334(c)(1).

68. The Trustee has not disclosed any of these three appeals to this Court. Complete silence in the Carveout Motion about three separate pending appeals, each of which could invalidate the basis for the motion, is a material omission. This Court cannot be asked to authorize a $1.62 million sale on the basis of a judgment the Trustee knows (or should know) is under active appellate challenge in three separate proceedings but chose not to mention.

### IV. The Carveout Benefits Only the Trustee and His Counsel.

69. The Trustee concedes that "[a]bsent a carveout, liquidation of the Brooklyn Properties would not yield any funds necessary to pay administrative expenses or a distribution to general unsecured creditors." [Dkt. No. 76, ¶ 11.]

70. In plain terms: no unsecured creditor will receive any distribution from the proposed sale.

71. The Debtor will receive nothing.

72. The Trust beneficiaries will receive nothing.

73. Only the Trustee and his professionals will receive anything. The Trustee will earn a commission under 11 U.S.C. § 326(a). Counsel Furr and Cohen, P.A. will receive attorney's fees.

74. A chapter 7 trustee's fiduciary duty runs to the estate and its creditors. A carveout that benefits only the fiduciary and his counsel, with nothing for any other stakeholder, does not serve a legitimate estate purpose.

### V. The Carveout Motion Was Filed Before Diligence Was Complete.

75. The Carveout Motion concedes that the title search had been ordered but not yet completed when the motion was filed. [Dkt. No. 76, ¶ 10.]

76. A motion to approve disposition of real property before the title search has been completed is premature on its face.

77. The Trustee does not know what liens exist. The Trustee does not know the true chain of title. The Trustee has not identified all holders of record interest.

78. This procedural haste is not harmless. It forecloses informed objection by parties whose interests depend on the facts the title search would disclose.

### VI. Every Material Fact Surrounding the Trustee's Handling of This Motion Evidences Bad Faith, and None Supports Approval.

79. The ordinary response of a disinterested fiduciary, on learning that the secured creditor with whom he is negotiating has (a) collected $884,720 pre-petition from assets not disclosed in the schedules, (b) made affirmative misrepresentations to this Court at the reinstatement hearing, and (c) exposed the estate to potential preference claims on sales occurring sixty-eight days before the petition, is to pause. To verify. To obtain a sworn accounting from the creditor. To evaluate the estate's own affirmative claims under 11 U.S.C. § 547(b) before committing to a carveout with that same creditor. To reassess whether the carveout arrangement, negotiated in the dark as to those facts, remains in the estate's interest once those facts are on the record.

80. The Trustee did none of these things. Instead, twenty-five days after the Reply placed Valley National Bank's pre-petition conduct on the docket, the Trustee filed the Carveout Motion. He accelerated. And he did so in combination with a sanctions motion directed at the incapacitated Debtor, whose appearance the Trustee had himself agreed to waive on incapacity grounds. The

pattern formed by that acceleration and that concurrent sanctions motion, assessed objectively, reveals the following:

81. First, the motion was filed before the Trustee's own title search was complete. [Dkt. No. 76, ¶ 10.] A fiduciary acting in good faith does not ask a court to approve a $1.62 million real property transaction on title facts he has admittedly not yet verified.

82. Second, the motion conceals three pending state appeals that, if successful, would eliminate Valley National Bank's secured position and therefore eliminate any basis for a carveout. The appeals are a matter of public record on the New York State courts' electronic filing system. They are identified by docket number in Exhibit E. The Trustee's failure to disclose them is either a product of inadequate investigation (which, where $1.62 million in property is at issue, is itself bad faith) or a deliberate omission.

83. Third, the motion was not served on the successor trustees or beneficiaries named in the trust instruments, whose identities the Trustee has held since his investigation of the Brooklyn Properties began. The names appear on the face of the Trusts. The Trusts are referenced in the Trustee's own Response [Dkt. No. 53, ¶ 6]. The failure to serve identified necessary parties in their correct capacity cannot be explained by oversight.

84. Fourth, the motion was filed by a Trustee who had, three weeks earlier, disclosed in writing that he was negotiating the carveout with Valley National Bank [Dkt. No. 53, ¶ 8] and who had, by the filing of the Carveout Motion, constructive notice of documentary evidence that Valley National Bank had concealed $884,720 in pre-petition collections from this Court. A fiduciary presented with that evidence has a duty to reevaluate, not to advance.

85. Fifth, the motion produces, by the Trustee's own concession, a sale from which no unsecured creditor receives a distribution. [Dkt. No. 76, ¶ 11.] The only beneficiaries are the Trustee, his counsel, and the same creditor whose conduct is now on this Court's record.

86. Sixth, the motion is being advanced in tandem with a separate motion for sanctions that the Trustee has directed at the Debtor, an incapacitated eighty-one-year-old man whose appearance the Trustee himself agreed to waive only weeks earlier, on the very incapacity ground for which sanctions are now being sought. [Dkt. No. 53, ¶¶ 18–19.] That posture is not consistent with the duties of a neutral fiduciary. It is consistent with a deliberate effort to suppress opposition to the Carveout Motion by intimidating the estate's most directly affected party out of the proceeding. The facts of that sanctions motion should be assessed not in isolation but as part of the pattern presented by this Carveout Motion.

87. Each of these six facts, taken alone, is an independent reason to deny the motion. Taken together, they are the record of a Chapter 7 trustee who accelerated in the very circumstances, credible evidence of secured-creditor misconduct placed on his docket, that obliged him to slow down, while simultaneously pursuing sanctions against the one remaining natural person with standing to contest the sale. A fiduciary so circumstanced does not approve the Chapter 7 sale of property he has not fully title-searched, for the benefit of a creditor whose prior representations to this Court are in substantial question, on a judgment he has not disclosed is under triple appellate challenge, without service on the beneficial owners, and under cover of a sanctions motion aimed at the incapacitated Debtor. Nothing in the record before this Court supplies a countervailing reason to approve.

88. The Successor Trustee does not presume to assign a subjective motive to the Trustee. The Court need not resolve whether the Trustee acted with knowledge of the matters he failed to disclose, or with indifference to them, or with a deliberate strategy of suppression. Under any characterization, the facts on the face of the Carveout Motion, the facts on the face of the Trustee's own prior filings, and the facts on the face of this Court's docket do not justify approval. The only party who stands to benefit from the motion as drafted is the Trustee himself. That is not a ground for approval under Chapter 7. It is a ground for denial.

**RELIEF REQUESTED**

89. For the reasons stated above, the Successor Trustee respectfully requests that this Court:

90. DENY the Trustee's Motion to Approve Carveout Agreement with Valley National Bank [Dkt. No. 76];

91. In the alternative, DENY the motion without prejudice pending (a) completion of the title search referenced in paragraph 10 of the motion, (b) service on all successor trustees and beneficiaries identified in the Trusts, (c) full disclosure of the three pending appeals in Appellate Division, Second Department, Docket Nos. 2025-07305, 2025-07309, and 2025-13940, (d) a sworn accounting from Valley National Bank of all pre-petition collateral proceeds and all credits applied against its claimed obligation, (e) the Trustee's written analysis of preference exposure under 11 U.S.C. § 547(b) with respect to the September 25, 2025 transfers, and (f) twenty-one (21) days' written notice of any re-filed motion to all identified parties; and

92. Grant such other and further relief as the Court deems just and proper.

WHEREFORE, Shaun Itshaik, as Successor Trustee and Beneficiary of the 1052 East 57th Street Trust and the 1138 East 57th Street Trust, respectfully requests this Honorable Court enter an order **DENYING** the Trustee's Motion to Approve Carveout Agreement with Valley National Bank [Dkt. No. 76], and granting such other and further relief as the Court deems just and proper.

Dated: April 23, 2026

Respectfully submitted,

/s/ Shaun Itshaik

**SHAUN ITSHAIK, Pro Se**
As Successor Trustee and Beneficiary of
the 1052 East 57th Street Trust and
the 1138 East 57th Street Trust
2363 East 74th Street
Brooklyn, New York 11234
Telephone: (917) 596-8940
Email: sitsha@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2026, a true and correct copy of the foregoing Opposition, together with Exhibits A, B, C, D, and E, was served by United States Postal Service, first-class mail, postage prepaid, upon the following:

Marc P. Barmat, Esq.
Chapter 7 Trustee
Furr and Cohen, P.A.
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Email: mbarmat@furrcohen.com

Office of the United States Trustee
Region 21
51 SW 1st Avenue, Suite 1204
Miami, FL 33130

Counsel for Valley National Bank
(Address on record with the Court)

/s/ Shaun Itshaik
**SHAUN ITSHAIK, Pro Se**

# EXHIBIT A

**Sami Itshaik's Notarized Resignation as Trustee of the 1052 East 57th Street Trust Dated December 31, 2020**

# 1052 East 57th Street Trust

1052 East 57th Street
Brooklyn, NY 11234

December 31, 2020

To Whom It May Concern

I Sammy Itshaik resign my duties as trustee and relieve myself of all further liability for 1052 East 57th Street Trust effective immediately.

Sammy Itshaik



State of Florida          County of Broward
The foregoing instrument was acknowledged before me via ☑ physical presence  OR  ☐ online notarizations this ___ day of ___ , 20 __ .
By _____
Personally known ___ OR produced identification ✓
Type of identification produced _____

My Commission Expires _____

CRISTHIAN AGUILERA
Notary Public-State of Florida
Commission # GG 912055
My Commission Expires
September 11, 2023

# EXHIBIT B

**Sami Itshaik's Notarized Resignation as Trustee of the 1138 East 57th Street Trust Dated December 31, 2020**

# 1138 East 57th Street Trust

1138 East 57th Street
Brooklyn, NY 11234

December 31, 2020

To Whom It May Concern

I Sammy Itshaik resign my duties as trustee and relieve myself of all further liability for 1138 East 57th Street Trust effective immediately.

Sammy Itshaik



te of Florida        County of _____
foregoing instrument was acknowledged before me
physical presence, OR ☐ online notarizations
_____ day of _____ , 20 __ .
_____
ersonally known ___ OR produced identification
ype of identification produced _____

Commission Expires _____

CRISTHIAN AGUILERA
Notary Public-State of Florida
Commission # GG 912055
My Commission Expires
September 11, 2023

# EXHIBIT C

**Sami Itshaik's Sworn Affidavit Valley National Bank v. Itshaik, Index No. 514761/2022 Dated March 27, 2023**

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM INDEX NO. 514761/2022

NYSCEF DOC. NO. 34
RECEIVED NYSCEF: 07/31/2023

# EXHIBIT J

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM    INDEX NO. 514761/2022

NYSCEF DOC. NO. 34    RECEIVED NYSCEF: 07/31/2023

35-7263963

# 1052 EAST 57TH STREET TRUST

## ESTHER ITSHAIK, Grantor

## SAMI ITSHAIK, Trustee



FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                             RECEIVED NYSCEF: 07/31/2023

AGREEMENT, dated the 24th day of November 2003, between ESTHER ITSHAIK, the Grantor, and SAMI ITSHAIK, the Trustee.

WHEREAS, the Grantor is desirous of creating an irrevocable Trust for the uses and purposes herein set forth which shall be known as "1052 EAST 57TH STREET TRUST";

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other valuable considerations, the Grantor does hereby transfer, convey, assign and deliver to the Trustee the property described in Schedule A annexed hereto (all of such property and any additions thereto herein being referred to collectively as the "trust estate") and the Trustees do hereby acknowledge receipt thereof and do hereby agree to hold the trust estate, IN TRUST, for the uses and purposes, with the powers, and subject to the terms and conditions hereinafter set forth:

**FIRST:**

This Agreement and the Trust hereunder for the benefit of the Grantor is irrevocable and may not be altered, amended, revoked or terminated in whole or in part by the Grantor at any time.

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM    INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                                RECEIVED NYSCEF: 07/31/2023

**SECOND:**

A. The Trustee shall hold the property transferred to the Trust for the use and benefit of the Grantor during her lifetime. No principal from the Trust may be distributed to or for the benefit of the Grantor.

B. Any income not expended pursuant to Paragraph A shall be added to principal annually.

**THIRD:**    The Grantor reserves the right, for any person including the Grantor, to increase the trust estate by delivering property to the Trustees, by bequest or devise by Will, or by any other means.

**FOURTH:**    Upon the death of the Grantor, the principal and any undistributed income of the trust estate shall be disposed of as provided in Articles FIFTH and SIXTH.

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM    INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                          RECEIVED NYSCEF: 07/31/2023

**FIFTH:**      The Trustee may pay out of the trust estate to the legal representative of the Grantor's estate such amount or amounts as such legal representative shall request, in writing, for payment of any debts of such Grantor, all estate, inheritance and other death taxes, including interest and penalties on any such tax, arising because of such Grantor's death, the expenses of the last illness and the funeral expenses of such Grantor, and the attorneys' fees and other costs and expenses incurred in administering such Grantor's estate.  The Trustees shall have no duty or obligation to inquire as to the correctness, or as to the propriety of the payment, of any amount or amounts so requested or to see to the application thereof by such legal representative, but payment to such legal representative shall be a full and complete discharge to the Trustee with respect to such payment or payments.

**SIXTH:**

Upon the death of the Grantor, the property hall be held in Trust for the benefit of the grantor's children in equal shares per stirpes and distributed to each child or charity selected by the child, at such times and in such amounts as the Trustee shall determine.

**SEVENTH:**   If any person named or referred to in this Agreement and the Grantor shall die under such circumstances that it is difficult or impossible to determine who predeceased the other, then the terms and provisions of this Agreement shall be construed as though the Grantor had survived such person and any Trust hereunder shall be administered and distributed in all respects accordingly.

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM
NYSCEF DOC. NO. 34

INDEX NO. 514761/2022
RECEIVED NYSCEF: 07/31/2023

**EIGHTH:**    In any judicial proceedings involving this Agreement, it shall not be necessary to serve process upon any person under a disability if any other party to the proceeding not under a disability has the same interest as the person under a disability.

**NINTH:**    Wherever necessary or appropriate, the use herein of any gender shall be deemed to include the other genders and the use herein of either the singular or the plural shall be deemed to include the other.

**TENTH:**

A. Whenever income or principal is to be used for the benefit of (I) a minor or (II) any other beneficiary who, in the sole judgment of the Trustee, is incapable of managing his or her own affairs, the Trustee may make payment of such property in any or all of the following ways:

1. By paying such property to such beneficiary's parent, spouse, guardian, conservator or committee, to any person as custodian for such person under any applicable Uniform Gifts or Transfers to Minors Act, or to any other person having the care and control of such beneficiary.

2. By paying directly to any such beneficiary such sums as the Trustee may deem advisable as an allowance.

3. By expending such property in such other manner as the Trustee, in their discretion, believe will benefit any such beneficiary.

B. Upon the termination of any Trust hereunder, if principal becomes vested in and payable to a minor, the Trustee may make payment thereof in any of the ways set forth in the preceding Paragraph A or may defer payment of any part or all thereof, meanwhile applying for

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM INDEX NO. 514761/2022

NYSCEF DOC. NO. 34 RECEIVED NYSCEF: 07/31/2023

the benefit of such beneficiary so much or all of such principal and of the income therefrom, as the Trustee, in their discretion, may deem advisable. Any income not expended by the Trustee shall be added to principal annually. The Trustee shall pay any remaining principal to such minor upon the minor's attaining the age of majority or to the minor's estate upon death prior to such payment in full.

C. Whenever in this Agreement the Trustee are directed or authorized either to pay over to or to apply for the benefit of any beneficiary, either principal or income, or both, the Trustee may, in his/her discretion, make such payments: (1) to such beneficiary directly, or (2) by the payment of such beneficiary's bills or (3) to the spouse, either parent, the guardian or any adult child of such beneficiary, to the conservator or committee of such beneficiary, or to any other person having the care and custody of such beneficiary.

D. Any payment or distribution authorized in this Article shall be a full discharge to the Trustee with respect thereto.

### ELEVENTH:

The Trustee shall have, with respect to any and all property at any time held by him/her hereunder, and whether constituting principal or income therefrom, the following powers, in addition to those conferred by law:

A. To retain any such property as an investment without regard to the proportion which such property or property of a similar character, so held, may bear to the entire amount of the Trust in which such property is held whether or not such property is of the class in which Trustee are authorized by law or any rule of court to invest Trust funds.

B. To sell such property at either public or private sale for cash or on credit; to exchange

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM
NYSCEF DOC. NO. 34

INDEX NO. 514761/2022

RECEIVED NYSCEF: 07/31/2023

such property, and to grant options for the purchase thereof.

C. To invest and reinvest in property of any character, real or personal, foreign or domestic, including, but without limiting the generality of the foregoing, bonds, notes, debentures, mortgages, common and preferred stocks, without being limited to the class of securities in which Trustee is authorized by law or any rule of court to invest Trust funds and without regard to the proportion which any such property or property of a similar character held may bear to the entire amount of the Trust in which such property is held.

D. To manage, improve, lease, option, partition, repair, alter, demolish, abandon, insure and otherwise deal with any real property in the same manner as if they were the absolute owner thereof.

E. To borrow money in such amounts and upon such terms, from themselves individually or from others, for such purpose or purposes as they, in their discretion, may determine and in connection therewith to execute promissory notes, mortgages or other obligations and to pledge or mortgage any such property as security.

F. To employ agents, accountants, custodians, experts and counsel, legal or investment, to rely upon information and advice furnished thereby, and to pay reasonable fees for such services.

G. From time to time to register any property in the name of his or her nominee and to place property in a custody or safekeeping account.

H. To receive additional property from any source and add it to and mingle it with any Trust hereunder.

I. To make any division or distribution in cash or in other property or undivided interests therein, or partly in cash and partly in other property or undivided interests therein, and, except

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                                          RECEIVED NYSCEF: 07/31/2023

as otherwise provided, to allot any property, including an undivided interest in any property, to any separate Trust hereunder, whether or not the same kind of property is allotted to any other such Trust.

J. To do all such acts, take all such proceedings and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with relation to any such property, as if the absolute owner thereof, and in connection therewith to make, execute and deliver any instruments and to enter into any covenants or agreements binding any Trust under this declaration of Trust.

### TWELFTH:

A. The Trustee shall not be liable for any loss sustained by the trust estate by reason of the purchase, retention, sale or exchange of any investment by the Trustees in good faith.

B. Persons dealing with the Trustee shall not be obligated to look to the application of any moneys or other property paid or delivered to the Trustee or to inquire into the Trustee's authority as to any transaction. All powers granted to the Trustee shall continue until actual distribution of the property.

C. Any decision of the Trustee with respect to the exercise or non-exercise by him/her of any discretionary power hereunder, or the time or manner of the exercise thereof, made in good faith, shall fully protect him/her and shall be binding and conclusive upon all persons interested in the trust estate.

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM    INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                          RECEIVED NYSCEF: 07/31/2023

### THIRTEENTH:

A. SAMI ITSHAIK shall be appointed to act as Trustee. If SAMI ITSHAIK shall fail to qualify or cease to act for any reason, then SHARON ITSHAIK shall be appointed to act as Successor Trustee. If SHARON ITSHAIK shall fail to qualify or cease to act for any reason, then AMIT ITSHAIK, LIMOR KOBILO and DON ITSHAIK shall be appointed to act as Successor Trustees.

B. A Trustee may resign at any time upon thirty (30) days' prior written notice to any co-Trustee and to the Grantor, or if the Grantor is incapacitated, to the person having the care and control of the Grantor. If a Trustee, or a successor Trustee, resigns or is removed, he or she shall be relieved of all further liability hereunder other than to account for all property received while acting as Trustee and, if applicable, to turn over such property to a successor Trustee.

C. No successor Trustee shall be liable or responsible in any way for the acts or defaults of any predecessor Trustee, nor for any loss or expense caused by anything done or neglected to be done by any predecessor Trustee, but such successor Trustee shall be liable only for his or her own acts and defaults with respect to the Trust funds actually received by him or her as Trustee. Every successor Trustee shall be vested with all the duties, rights, titles, and powers, whether discretionary or otherwise, of the original Trustee. No Trustee or successor Trustee shall be required to give any bond or other security for the faithful performance of his or her duties as such.

D. All discretionary powers granted to the Trustee hereunder may be exercised by him or her, except that no Trustee who is also a beneficiary hereunder shall participate in exercising any discretionary power to pay himself or herself income or principal.

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM          INDEX NO. 514761/2022

NYSCEF DOC. NO. 34                                                    RECEIVED NYSCEF: 07/31/2023

E. The written approval of the Grantor of the account of the Trustee or the Grantor's written approval of any action or actions taken by the Trustees shall be final and conclusive and shall be binding upon all persons then or thereafter having any interest in this Agreement or in the trust estate.

**FOURTEENTH:**    If, at any time, the Grantor has become physically or mentally incapacitated, and such condition shall be certified in writing by two (2) licensed physicians, whether or not a court of competent jurisdiction has declared the Grantor incompetent or in need of a conservator, the provisions of Article THIRTEENTH with respect to Trustee shall be operative until the Grantor shall no longer be incapacitated and such fact shall be certified in writing by two (2) licensed physicians.

**FIFTEENTH:**    This Agreement and the Trust hereunder shall be administered, interpreted and distributed according to the laws of the State of New York. Notwithstanding the application of New York law, the actual administration of any Trust hereunder may be conducted in such location, and the location of its assets may be changed, as the Trustee, in his or her discretion, may determine from time to time.

IN WITNESS WHEREOF, the Grantor and the Trustee have set their hands and seals on the date first written above.

**ESTHER ITSHAIK, Grantor**          **SAMI ITSHAIK, Trustee**

FILED: KINGS COUNTY CLERK 07/31/2023 02:05 PM
INDEX NO. 514761/2022

NYSCEF DOC. NO. 34
RECEIVED NYSCEF: 07/31/2023

STATE OF NEW YORK )
: ss.:
COUNTY OF *Kings* )

On this *24th* day of *November* *2003*, before me personally appeared ESTHER ITSHAIK, person known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the individual or the person on behalf of which the individual acted, executed the instrument.

SARAH KASSAI
NOTARY PUBLIC, State of New York
No. 24-4731297
Qualified in Kings County
Commission Expires June 30, 20*04*
_____
Notary Public

STATE OF NEW YORK )
: ss.:
COUNTY OF *Kings* )

On this *24th* day of *November* *2003*, before me personally appeared SAMI ITSHAIK, person known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual or the person on behalf of which the individual acted, executed the instrument.

SARAH KASSAI
NOTARY PUBLIC, State of New York
No. 24-4731297
Qualified in Kings County
Commission Expires June 30, 20*04*
_____
Notary Public

INDEX NO. 514761/2022

NYSCEF DOC. NO. 34

RECEIVED NYSCEF: 07/31/2023

## SCHEDULE A:

The Grantor hereby transfers to the Trustee or the Trustee has otherwise acquired the

residence listed below:

1052 East 57th Street
Brooklyn, NY 11234

_____
**ESTHER ITSHAIK, Grantor**

_____
**SAMI ITSHAIK, Trustee**

Dated:

# EXHIBIT D

**Trustee's Response in Opposition to Emergency Motion to Dismiss
[Dkt. No. 53, filed March 20, 2026]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

SAMI ITSHAIK

Debtor.

Case No. 25-24251-SMG
Chapter 7

_____/

**TRUSTEE'S RESPONSE IN OPPOSITION TO EMERGENCY
MOTION TO DISMISS CHAPTER 7 CASE AND REQUEST TO EXCUSE DEBTOR
FROM ATTENDING 341 MEETING AND CURING DEFICIENCIES**

Chapter 7 Trustee, MARC P. BARMAT, files this response in opposition to the *Emergency
Motion of Shaun Itshaik, as Next Friend, to Dismiss Chapter 7 Case Pursuant to Fed. R. Bankr.
P. 1016, 11 U.S.C. §§ 305(a) and 707(a), On the Grounds That the Debtor is Medically
Incompetent and Incapable of Participating in These Proceedings* [Dkt No. 47] ("**Motion to
Dismiss**") and requests the court to excuse the debtor from attending the 341 meeting and curing
deficiencies, and states:

1.     The Motion to Dismiss seeks dismissal based upon the alleged incapacity of the
Debtor. The Trustee opposes the Motion to Dismiss as dismissal is not warranted under controlling
law.

**BACKGROUND**

2.     The Debtor filed this Chapter 7 case on December 2, 2025 [Dkt. No. 1]. The
bankruptcy case was subsequently dismissed [Dkt. No 25] and reinstated [Dkt. No.41] ("**Order
Reinstating Chapter 7 Case**").

3.     The Order Reinstating Chapter 7 Case required the Debtor to file certain documents
to cure previous deficiencies. The Debtor has failed to cure the deficiencies.

4.    The §341 meeting of creditors is scheduled for March 31, 2026, at 8:30 AM [Dkt. No. 43].

Bankruptcy Estate Assets – Brooklyn Properties

5.    The Debtor's Schedule A/B identifies two Brooklyn, New York Properties: 1052 E. 57th Street and 1138 E. 57th Street ("**Brooklyn Properties**"). The Debtor's schedules state the Brooklyn Properties are "on my name but not mine." The Trustee is in possession of a June 3, 2025 appraisal valuing the Brooklyn Properties at $1,620,000.

6.    The Trustee's investigation reveals the following regarding the Brooklyn Properties:

   a.  November 24, 2003 – Purchased by the Debtor

   b.  May 2020 – Debtor recorded "Correction Deeds" purporting to transfer the Brooklyn Properties into Trusts controlled by the Debtor as trustee.

   c.  May 7, 2025 – Supreme Court of the State of New York enters an *Order and Judgment*[1] declaring the Correction Deeds "void and of no effect," and deems the Correction Deeds "void, vacated, and set aside . . ." *Valley National Bank v. Sami Itshaik, et al.*, Supreme Court of the State of New York, Index No: 514761-2022.

7.    Valley National Bank filed a secured proof of claim in the amount of $7,183,126.17 (Proof of Claim No. 4), asserting a security interest in the Brooklyn Properties

8.    Valley National Bank requested the Trustee to administer the Brookly Properties. The Trustee and Valley National Bank are in the process of negotiating a carveout to the estate, subject to bankruptcy court approval.

---

[1]  A complete copy of the Order and Judgment is attached to Proof of Claim 4, filed by Valley National Bank.

9.     The Trustee intends to administer the Brooklyn Properties pursuant to 11 U.S.C. §§ 704 and 541.

### ARGUMENT IN OPPOSITION TO MOTION TO DISMISS

10.     The Debtor's alleged incompetency does not require dismissal of this chapter 7 case.

11.     Fed. R. Bankr. P. 1016 states:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event, the estate shall be administered and the case concluded in the same manner, as far as possible, as though the death or incompetency had not occurred . . .

12.     The impossibility of appearance by the debtor at the first meeting of creditors is an insufficient basis for dismissal. Dismissal is improper absent a showing of an adverse impact on the administration of the estate. *In re Oliver*, 279 B.R. 69 (Bankr. W.D.N.Y. 2002).

13.     The Trustee is not dependent on debtor's participation to liquidate the Brooklyn Properties. This chapter 7 case should continue as though the alleged incompetency had not occurred.

14.     Valley National Bank, the largest creditor, opposes dismissal and seeks administration of the estate by the Trustee.

15.     11 U.S.C. § 707(a) imposes no mandate for the dismissal of any case but reserves such outcome to the sound discretion of the court in those instances where cause is demonstrated. Cause does not exist to dismiss this case.

16.     Dismissal pursuant to 11 U.S.C. §305(a) is not appropriate as it would not serve the interests of the creditors or the debtor.

17.     Dismissal of this chapter 7 case would eliminate a centralized administration of the debtor's assets and harm all creditors.

**REQUEST FOR WAIVER OF DEBTOR'S APPEARANCE AT 341 MEETING, ETC.**

18.    To the extent the Court finds the Debtor is incompetent, the Trustee does not object to the Court waiving the debtor's appearance at the March 31, 2026 meeting of creditors and authorizing the Trustee to administer the estate's assets in the ordinary course.

19.    Further, the Trustee does not object to the Court's waiver of the Debtor's requirements as set out in the Order Reinstating Chapter 7 Case.

WHEREFORE, the Trustee respectfully requests this Honorable Court enter an order denying the Motion to Dismiss and, if the Debtor is found to be incompetent, waive the Debtor's requirement to appear at the 341 meeting of creditors, and requirement to comply with the Order Reinstating Chapter 7 Case, and granting such other relief as is just and proper.

Dated: March 20, 2026

FURR AND COHEN, P.A.
*Attorney for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: 561-395-0500
Facsimile: 561-338-7532

By: */s/ Marc P. Barmat*
MARC P. BARMAT
Florida Bar No. 0022365
Email: mbarmat@furrcohen.com

# EXHIBIT E

**NYSCEF Case Search Results Showing Three Pending Appeals Before the Appellate Division, Second Department in Valley National Bank v. Sami Itshaik et al. (Docket Nos. 2025-07305, 2025-07309, and 2025-13940)**

## NYSCEF - New York State Courts Electronic Filing (Live System)



## Case Search Results

Party Name: **sami It**

**Sort By:** Claim/Index #  ⌄

| Case #<br>Received Date | eFiling Status<br>Case Status | Caption | Court<br>Case Type |
|---|---|---|---|
| Not Assigned<br>10/13/2020 | Waiting for Index Number<br>*Pre-RJI* | VALLEY NATIONAL BANK v. TOP EXPRESS CAB CORP. et al | New York County Supreme Court<br>*Commercial - Contract* |
| 2025-07305<br>10/17/2025 | Full Participation Recorded | VALLEY NATIONAL BANK v. SAMI ITSHAIK et al | Appellate Division - 2nd Dept<br>*Civil Action - General* |
| 2025-07309<br>10/17/2025 | Full Participation Recorded | VALLEY NATIONAL BANK v. SAMI ITSHAIK et al | Appellate Division - 2nd Dept<br>*Civil Action - General* |
| 2025-13940<br>11/21/2025 | Partial Participation<br>Recorded | VALLEY NATIONAL BANK v. SAMI ITSHAIK et al | Appellate Division - 2nd Dept<br>*Real Property -Other* |
| 514761/2022<br>05/19/2022 | Full Participation Recorded<br>*Disposed* | VALLEY NATIONAL BANK v. SAMI ITSHAIK et al | Kings County Supreme Court<br>*Real Property -Other* |
| 655246/2020<br>10/13/2020 | Partial Participation<br>Recorded<br>*Disposed* | VALLEY NATIONAL BANK v. SHAMUELY CAB CORP. et al | New York County Supreme Court<br>*Commercial Division* |
| 655248/2020<br>10/13/2020 | Partial Participation<br>Recorded<br>*Disposed* | VALLEY NATIONAL BANK v. SAMI EXPRESS CAB CORP. et al | New York County Supreme Court<br>*Commercial Division* |
| 655249/2020<br>10/13/2020 | Partial Participation<br>Recorded<br>*Disposed* | VALLEY NATIONAL BANK v. TARZAN CAB CORP. et al | New York County Supreme Court<br>*Commercial Division* |
| 655304/2020<br>10/15/2020 | Partial Participation<br>Recorded<br>*Disposed* | VALLEY NATIONAL BANK v. TOP EXPRESS CAB CORP. et al | New York County Supreme Court<br>*Commercial Division* |