

**ORDERED in the Southern District of Florida on July 14, 2026.**

**Scott M. Grossman, Chief Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

SAMI ITSHAIK,                                          Case No. 25-24251-SMG

    Debtor.                                          Chapter 7
_____/

### ORDER APPOINTING TAREK K. KIEM, ESQ. AS GUARDIAN AD LITEM FOR DEBTOR SAMI ITSHAIK

This matter came before the Court for hearing on July 8, 2026 on the Court's *Order (I) Directing the Appointment of a Guardian Ad Litem for the Debtor, (II) Requiring Submission of Candidates, and (III) Setting Hearing*.[1] For the reasons discussed below, the Court will overrule the objection of Shaun Itshaik,[2] and will appoint Tarek K. Kiem, Esq. as guardian ad litem for debtor Sami Itshaik, pursuant to Federal Rule of Bankruptcy Procedure 1004.1(b).

---

[1] Dkt. No. 141.
[2] Dkt. No. 160.

## I.    Background.

### A.    The Debtor's Bankruptcy Filings.

Debtor Sami Itshaik commenced this bankruptcy case by filing a pro se petition under chapter 7 of the Bankruptcy Code on December 2, 2025.[3] This was his second bankruptcy filing in this district. Approximately thirteen months before this case, on November 21, 2024, Mr. Itshaik had filed a pro se petition under chapter 13 of the Bankruptcy Code.[4] That case was dismissed less than three weeks later, after he failed to timely file his schedules of assets and liabilities and other related forms.[5]

In this case as well, Mr. Itshaik again did not initially file his schedules of assets and liabilities and other related forms.[6] The clerk of court then gave him notice that if these delinquencies were not cured by December 16, 2025, his case may be dismissed.[7] On December 15, 2025, he moved for a 30-day extension of this deadline.[8] In his motion, he represented that he is appearing pro se in the matter and is receiving assistance from his son, Sharon (also referred to as Shaun). The motion goes on to state that:

> 4.    The Debtor suffers from cognitive decline as a result of a stroke he suffered. This medical condition has significantly impaired the Debtor's memory, particularly regarding historical financial information and past transactions.
>
> 5.    Due to the Debtor's cognitive impairment and memory difficulties, he requires substantial assistance to recall and compile the

---

[3] Dkt. No. 1.
[4] Case No. 24-22187-SMG.
[5] *Id.* at Dkt. No. 13.
[6] Dkt. No. 6.
[7] *Id.*
[8] Dkt. No. 14.

detailed financial information necessary to accurately complete the bankruptcy schedules and statements.

6.      The Debtor's son, Sharon, is assisting the Debtor in collecting all necessary documentation, reviewing historical records, and gathering the information required to properly and accurately complete the schedules. This process is time-consuming given the Debtor's medical condition and limitations.

7.      *The Debtor is committed to filing complete and accurate schedules and statements, but requires additional time to ensure that all information is properly gathered and verified given his medical limitations.*[9]

The Court granted in part and denied in part the motion, extending his deadline only to December 31, 2025.[10] On December 31, Mr. Itshaik timely filed bankruptcy schedules,[11] but he failed to file his statement of financial affairs, statement of current monthly income, and payment advices.[12] Because he failed to cure all deficiencies by the court-ordered December 31 deadline, on January 15, 2026, the Court then dismissed this case.[13]

The schedules he filed disclosed two single-family homes in Brooklyn, New York – 1052 E. 57th Street and 1138 E. 57th Street. For both properties, which the debtor listed on his Schedule A/B, he stated, "on my name but not mine."[14] Other than these two properties, $600 in cash, and 100% interests in "rjg cab corp," "hot express cab corp," and "best express cab corp," he listed no other assets. He did not claim any property as exempt. He also listed no creditors at all – no secured claims, no priority

---

[9] *Id.* at 2 (emphasis added).
[10] Dkt. No. 15.
[11] Dkt. No. 21.
[12] Dkt. No. 25.
[13] *Id.*
[14] Dkt. No. 21, at 4.

unsecured claims, and no general unsecured claims. In fact, other than listing the two Brooklyn properties, the three cab corporations, and the $600 in cash, his schedules are essentially blank. Likewise, his summary of assets and liabilities lists "$0" on each line.

On January 22, 2026, chapter 7 trustee Marc P. Barmat timely moved[15] for relief from the dismissal order under Federal Rule of Bankruptcy Procedure 9023.[16] In his motion, the trustee represented as follows:

> 4.      The Trustee reached out to the *pro se* debtor and his adult son and was advised the debtor will cure the above deficiencies by the filing of the required documents. It is anticipated that by the time this matter is scheduled for hearing before the Court, the deficiencies will be cured.
>
> 5.      Reinstatement of this case is appropriate under 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9023, as the dismissal resulted from procedural deficiencies that have been or will be cured and reinstatement will permit proper administration of the estate.
>
> 6.      The Trustee has identified matters requiring investigation and administration that warrant reinstatement for the benefit of creditors.
>
> 7.      No party will be prejudiced by reinstatement. Reinstatement will allow the Trustee to perform statutory duties under 11 U.S.C. § 704.[17]

The trustee served his motion and the notice of hearing on his motion on the debtor at the mailing address listed on his bankruptcy petition.[18] Neither the debtor, nor his son, nor any other person on his behalf appeared at the hearing on the trustee's motion. Counsel for secured creditor Valley National Bank, however, did

---

[15] Dkt. No. 30.
[16] Rule 9023 incorporates Federal Rule of Civil Procedure 59.
[17] Dkt. No. 30.
[18] Dkt. No. 32; *see* Dkt. No. 1, at 2.

appear and supported the trustee's motion. The Court then granted the motion on February 19, 2026,[19] thus vacating the dismissal order and reinstating this case.

B.      The Creditors and Their Claims.

Valley National Bank's claim arises from the debtor's guaranties of loans to his taxicab companies. Valley National Bank asserts a $7,183,126.17 claim against the debtor, which it contends is secured by the two Brooklyn properties pursuant to four 2022 New York state court judgments.[20] According to Valley National Bank's proof of claim, the two Brooklyn properties are collectively worth $1.8 million.[21] Thus, Valley National Bank's claim consists of a $1.8 million secured claim, and a $5,383,126.17 unsecured claim.[22]

Valley National Bank also holds a May 7, 2025 New York state court judgment against Sami Itshaik; 1052 East 57th Street Trust, Sami Itshaik, Trustee; and 1138 East 57th Street Trust, Sami Itshaik, Trustee; avoiding and setting aside transfers of the two Brooklyn properties pursuant to certain "Correction Deeds," and declaring that Valley National Bank's four underlying judgments are liens against these two Brooklyn properties.[23]

In addition to Valley National Bank's claim, four other creditors filed proofs of claim in this case – JPMorgan Chase Bank, N.A., with a $2,718.54 unsecured claim;[24] DePalma Acquisition I LLC, with a $4,491,228.98 unsecured claim;[25] American

---

[19] Dkt. No. 41.
[20] Claim No. 4-1.
[21] *Id.*
[22] *Id.*; *see* 11 U.S.C. § 506(a).
[23] Claim No. 4-1, at 22-25.
[24] Claim No. 1-1.
[25] Claim No. 2-1.

Express National Bank, with a $234.39 unsecured claim;[26] and Tower Capital Management Servicer NYCTL 2025–A Trust with a $57,504.63 secured claim based on a tax lien certificate.[27] Although it did not file a proof of claim, early on in the case, creditor Santander Consumer USA Inc. also appeared to seek stay relief to repossess a 2020 Jeep Grand Cherokee that the debtor did not return after his lease had matured on February 5, 2024.[28] The Court granted that motion on January 14, 2026.[29]

C.    Sharon "Shaun" Itshaik's Motion to Dismiss.

About one month after the Court reinstated this case – and roughly four months after the petition date – the debtor's son, Shaun Itshaik, as next friend, moved to dismiss the case, asserting that his father was medically incompetent and incapable of participating in the case,[30] based on allegations that debtor Sami Itshaik has "permanent, structural neurological damage to the bilateral hippocampus – the region of the brain principally responsible for memory."[31] Both the trustee and Valley National Bank opposed the motion.[32] The trustee argued that under Federal Rule of Bankruptcy Procedure 1016 a debtor's incompetency does not abate a chapter 7 case,[33] but that the trustee would not object to waiving the remainder of the requirements for a chapter 7 debtor's participation in his case.[34]

---

[26] Claim No. 3-1.
[27] Claim No. 5-1.
[28] Dkt. No. 18.
[29] Dkt. No. 24.
[30] Dkt. No. 47.
[31] *Id.* at 2.
[32] Dkt. Nos. 53, 54.
[33] Fed. R. Bankr. P. 1016(a).
[34] Dkt. No. 53, at 3-4.

Valley National Bank joined in the trustee's opposition.[35] It argued that:

1.  In addition to joining with the Trustee's Response, Creditor would also state that Debtor has engaged in a long history of efforts to thwart the legitimate efforts of Creditor including fraudulent conveyances and other dilatory tactics. In fact, the very filing of this case was an attempt to stop Creditor from realizing on its substantial claims which the Debtor now sees as a tactical error which he seeks to undo by this competency tactic.

2.  Creditor believes the only way that creditors will ever see any recovery is by the continued jurisdiction of the Bankruptcy Court preventing the delay of further fraudulent conveyances and obstreperous litigation.

3.  An experienced trustee such as Mr. Barmat can efficiently and effectively bring recovery to the creditors and his continued involvement is in the best interest of the creditors and the estate.[36]

In advance of the hearing on his motion to dismiss the case, Shaun Itshaik filed a reply brief in which he argued – for the first time – that this chapter 7 bankruptcy case was void at the outset because the debtor lacked cognitive capacity at the time of filing.[37] At the hearing on the motion to dismiss, however, Shaun Itshaik made a critical admission – that he actually assisted his father in filing the case that he is now seeking to dismiss. This admission negated for the Court any notion that the filing was unauthorized, and so for the reasons stated on the record at the March 25, 2026 hearing, the Court denied the motion to dismiss.[38] Shaun Itshaik has appealed that order.[39]

---

[35] Dkt. No. 54.
[36] *Id.* at 1.
[37] Dkt. No. 56, at 2-6.
[38] Dkt. No. 60.
[39] Dkt. No. 66. Shaun Itshaik, as appellant, has not ordered the transcript of the March 25, 2026 hearing, and under Federal Rule of Bankruptcy Procedure 8009(b)(1) his deadline to do so has since expired.

D.      Shaun Itshaik's Motion to Remove the Trustee.

Shaun Itshaik, again proceeding as next friend for debtor Sami Itshaik, then sought to remove the trustee.[40] After a hearing on June 10, 2026,[41] the Court denied that motion on three independent grounds.[42] First, while a next friend may constitute the real party in interest for purposes of seeking relief on behalf of another, a next friend who is not himself an attorney may not appear pro se and instead must retain counsel to prosecute the requested relief. Because Shaun Itshaik was not appearing through counsel, his motion was procedurally deficient on that basis alone. Second, even if the debtor or his next friend had been represented by counsel, an individual debtor in an insolvent chapter 7 case lacks standing to seek the trustee's removal. In this case, the only material assets are the two Brooklyn properties, worth (according to Valley National Bank) approximately $1.8 million. A total of $11,734,812.71 in claims have been filed in the case, consisting of $1,857,504.63 in secured claims and $9,877,308.08 in unsecured claims. In addition, the estate continues to incur administrative expenses, which have steadily increased as a result of extensive litigation. Thus, there is no reasonable possibility in this case of the trustee recovering sufficient assets to pay all claims in full.[43] In a chapter 7 case, it is only

---

[40] Dkt. No. 111.

[41] Dkt. No. 126.

[42] Dkt. No. 159, at 16:11-34:20.

[43] Although Shaun Itshaik disputes the amount of Valley National Bank's claim, there does not appear to be any dispute that Valley National Bank is owed significantly more than the two Brooklyn properties are worth. As such, without Valley National Bank's consent to a "carveout" from its collateral, liquidation of the Brooklyn properties would not yield any proceeds from which to pay administrative expenses or make any distribution to general unsecured creditors. Valley National Bank has therefore agreed to a carveout equal to 15% of the gross sales proceeds of each of the Brooklyn properties for the benefit of the estate, plus payment of the trustee's statutory commission under 11 U.S.C. § 326. The Court approved that carveout over Shaun Itshaik's objection, by order entered on April 29, 2026. Dkt. No. 107.

after payment in full of all claims, with interest, that an individual debtor would be entitled to any distribution. As a result, the debtor lacks any pecuniary interest in the trustee's administration of the estate and therefore lacks standing to seek his removal. And finally, on the merits,[44] the Court concluded there was no basis to remove the trustee. Shaun Itshaik appealed that ruling as well.[45]

> E.   The Trustee's Motion to Extend Time to Object to the Debtor's Discharge and Appointment of a Guardian Ad Litem.

Also set for hearing on June 10, 2026 was the trustee's motion to extend his deadline to object to the debtor receiving a discharge.[46] As the Court explained at the hearing, an individual chapter 7 case essentially proceeds on two tracks.[47] Track one is the individual's pursuit of a discharge of his debts, which is usually the goal of an individual filing a chapter 7 bankruptcy petition. Track two is the trustee's collection and liquidation of assets to pay creditors. To date, all the concerns raised by Shaun Itshaik pertained to track two – the trustee's collection and liquidation of assets to pay creditors – as to which, the Court explained, the debtor or anyone purporting to act on his behalf lacked standing to take issue.

But now that the trustee sought an extension of time to object to the debtor's discharge, track one – as to which the debtor does have standing – was implicated. Because it was the first request for an extension that is routinely granted in nearly

---

[44] *See* 11 U.S.C. § 324 ("The court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause.").

[45] Dkt. No. 145. By order entered on July 9, 2026, however, that appeal was dismissed because the appellant failed to timely file a statement of issues and designation of record, as required by Federal Rule of Bankruptcy Procedure 8009. *See* Dkt. No. 162.

[46] Dkt. No. 117.

[47] Dkt. No. 159, at 35:1-23. *See also In re Murray*, 2026 WL 376350, at *2 (Bankr. S.D. Fla. 2026).

every case,[48] the Court granted the trustee's motion.[49] At that same time, the Court

determined that the concerns raised by Shaun Itshaik as to his father's capacity –

while not sufficient to warrant dismissal of the case or removal of the trustee – did at

this juncture warrant an inquiry into whether a guardian ad litem needed to be

appointed under Federal Rule of Bankruptcy Procedure 1004.1, to protect the debtor's

interests. After raising the issue, both the trustee and Valley National Bank conceded

the facts necessary for the Court to order the appointment of a guardian ad litem,

thus obviating the need for an evidentiary hearing to determine the debtor's

competence.

## II.     The Selection Process.

Federal Rule of Bankruptcy Procedure 1004.1 specifically contemplates a

bankruptcy petition being filed by an incompetent debtor. It states as follows:

> (a) Represented Infant or Incompetent Person. If an infant or an
> incompetent person has a representative-such as a general guardian,
> committee, conservator, or similar fiduciary-the representative may file
> a voluntary petition on behalf of the infant or incompetent person.
>
> (b) Unrepresented Infant or Incompetent Person. *If an infant or an
> incompetent person does not have a representative:*
>
>> *(1) a next friend or guardian ad litem may file the petition; and*
>>
>> *(2) the court must appoint a guardian ad litem or issue any other
>> order needed to protect the interests of the infant debtor or
>> incompetent debtor.*[50]

Thus, the rule specifically contemplates that an individual need not be competent to

file a bankruptcy petition. In fact, case law supports the notion that an individual

---

[48] *See* Fed. R. Bankr. P. 4004(b)(1).
[49] Dkt. No. 139.
[50] Fed. R. Bankr. P. 1004.1 (emphasis added).

10

should not be deprived of the protections of the Bankruptcy Code due to mental incompetence.[51]

So, in order to provide the opportunity for an incompetent person to file for bankruptcy, Rule 1004.1 provides two options. First, if the incompetent individual already had a representative – such as a general guardian, committee, conservator, or similar fiduciary – that representative may file a voluntary bankruptcy petition on behalf of the incompetent person.[52] Alternatively, where the incompetent person does not already have a representative, a next friend or guardian ad litem may file a bankruptcy petition for that person. The court must then appoint a guardian ad litem "or issue any other order needed to protect the interests of the . . . incompetent debtor."[53]

Thus, Rule 1004.1(b)(1) exists precisely for the circumstances of this case. It authorizes someone like Shaun Itshaik, as next friend, to file a petition for an incompetent debtor, like Sami Itshaik. And it further provides authority for the relief granted in this order – appointment of a guardian ad litem once it has been determined that a debtor is incompetent. Pursuant to that authority, on June 17, 2026, the Court entered an order directing the appointment of a guardian ad litem for the debtor.[54]

---

[51] *See, e.g., In re Zawisza*, 73 B.R. 929, 932-34 (Bankr. E.D. Pa. 1987); *In re Myers*, 350 B.R. 760, 762 (Bankr. N.D. Ohio 2006); *In re Kjellsen*, 155 B.R. 1013, 1018 (Bankr. D. S.D. 1993); *see generally* 11 U.S.C. § 109 (not imposing any competency requirement to be a debtor under the Bankruptcy Code); *see also* 11 U.S.C. § 109(h) (excusing a debtor from mandatory pre-filing credit counseling for incapacity or disability); *cf.* 11 U.S.C. § 303 (not imposing any competency requirement to be a debtor in an involuntary bankruptcy case).
[52] Fed. R. Bankr. P. 1004.1(a).
[53] Fed. R. Bankr. P. 1004.1(b)(2).
[54] Dkt. No. 141.

In that order, the Court directed the trustee and Valley National Bank (the only creditor that has regularly appeared at hearings and actively participated in this case) to – after consulting with the office of the United States trustee – jointly propose three individual candidates for the Court to consider appointing as guardian ad litem.[55] The Court suggested that the candidates be attorneys, to avoid the practical complication of a non-attorney guardian ad litem being required to retain separate counsel to appear in court on the debtor's behalf, which would add another layer of expense. To that end, the Court also directed the parties to discuss and address how the guardian ad litem's compensation would be funded.[56]

The United States trustee elected not to participate in the process.[57] And, despite the Court's request for three candidates, after reaching out to eight individuals, the trustee and Valley National Bank were only able to find two candidates willing to serve: Tarek K. Kiem, Esq., of Kiem Law, PLLC, and John K. Olson, Esq., of Venable LLP.[58] Each candidate submitted a declaration addressing his qualifications. In addition, although not required by Rule 1004.1, both candidates also made disclosures as to their disinterestedness – similar to disclosures ordinarily required for estate professionals under Federal Rule of Bankruptcy Procedure 2014. Both candidates' declarations further stated that their willingness to serve was based on Valley National Bank's representation that it will pay all reasonable fees and costs incurred by the individual serving as guardian ad litem in the course of that

---

[55] *Id.*
[56] *Id.*
[57] Dkt. No. 154, at fn. 1.
[58] *Id.* at 1.

individual's service, subject to the application and notice requirements of 11 U.S.C. §§ 327, 330, and 331, and Federal Rules of Bankruptcy Procedure 2014 and 2016. Finally, Mr. Kiem's declaration states that his current hourly rate is $450.00 per hour, and Mr. Olson's declaration states that his current hourly rate is $900.00 per hour.

### III.    Shaun Itshaik's Objections.

Shaun Itshaik – once again purporting to act as next friend for debtor Sami Itshaik – objected to both candidates.[59] He argues that neither Mr. Kiem nor Mr. Olson should be appointed based on certain past professional relationships disclosed in their respective declarations. Instead, Shaun Itshaik requests that he be appointed guardian ad litem, but that Valley National Bank be required to fund the legal fees for any attorney he hires. His objection will be overruled.

The Court will first address why Shaun Itshaik will not be appointed as guardian ad litem. The Court has already held, in denying his motion to remove the chapter 7 trustee,[60] that a next friend who is not himself an attorney may not appear pro se to prosecute relief on behalf of another; he must be represented by counsel.[61] Nothing in the objection reflects that Shaun Itshaik is appearing through counsel.

---

[59] Dkt. No. 160.

[60] Dkt. No. 140.

[61] At the hearing on Shaun Itshaik's motion to remove the chapter 7 trustee, the Court delivered an oral ruling explaining that next-friend status functions solely as a procedural mechanism to access the Court on behalf of an incompetent person and does not confer authority to independently litigate or act as legal counsel on behalf of an incompetent person. *See* 28 U.S.C. § 1654; *Miranda on behalf of Fiandor–Fuentes v. Warden, Florida Soft Side S.*, 2026 WL 319076, at *1 (M.D. Fla. Feb. 6, 2026); *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008); *Guajardo v. Luna*, 432 F.2d 1324, 1324 (5th Cir. 1970); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Moreover, while nothing in Federal Rule of Bankruptcy Procedure 1004.1 requires that a guardian ad litem be a "disinterested person" (as is required for a trustee's professionals under 11 U.S.C. § 327(a)), Shaun Itshaik argues that the proposed candidates are not disinterested persons and therefore should not be appointed. Shaun Itshaik, however, is clearly not a disinterested person. Bankruptcy Code section 101(14) defines a "disinterested person" as someone who is not a creditor, equity holder, insider, or recent director, officer, or employee of the debtor, and who has no interest materially adverse to the bankruptcy estate or its creditors or equity security holders because of any relationship or connection with the debtor.[62] Shaun Itshaik is the debtor's son, which under the Bankruptcy Code makes him an insider[63] and therefore per se not disinterested. In addition, Shaun Itshaik purports to be the successor trustee and beneficiary[64] of the 1052 East 57th Street Trust and the 1138 East 57th Street Trust – the trusts as to which Valley National Bank holds a state court judgment avoiding the debtor's transfers of the Brooklyn properties.[65] Thus, Shaun Itshaik holds an interest materially adverse to the bankruptcy estate and its creditors – he contends that the properties belong to the trusts and not to the bankruptcy estate. So, although disinterestedness is not a requirement for appointment as a guardian ad litem, to the extent Shaun Itshaik's objection to the two candidates proposed is that they are not disinterested, Shaun Itshaik's clear lack

---

[62] 11 U.S.C. § 101(14).
[63] *See* 11 U.S.C. § 101(31).
[64] *See* Dkt. No. 92.
[65] *See* Claim No. 4-1, at 22-25.

of disinterestedness in his own right further demonstrates the lack of merit to his objection.

Turning now to the disclosures made by the candidates – which again, are not required under Rule 1004.1, but which the Court finds helpful in assessing each candidate. These disclosures show that both candidates are in fact disinterested. Mr. Kiem discloses that (a) Marc P. Barmat (the chapter 7 trustee in this case) and Furr and Cohen, P.A. (counsel for the chapter 7 trustee in this case) represented Mr. Kiem in his separate capacity as subchapter V trustee in *In re Micron Devices, LLC*, a concluded matter unrelated to the debtor or this case; (b) Mr. Kiem serves, in the ordinary course of his separate law practice, as subchapter V trustee in several unrelated cases in which Furr and Cohen, P.A. or Shraiberg Page, LLP represents the debtor in those other cases; and (c) Kiem Law represented Furr and Cohen, P.A. from 2019 through 2022 in matters concerning collection of Furr and Cohen's own accounts receivable – a concluded, unrelated engagement.

None of the disclosed connections disqualify Mr. Kiem from serving as guardian ad litem. That a proposed guardian ad litem was once a client of the individual serving as chapter 7 trustee in this case in a concluded matter having nothing to do with the debtor here, creates no interest adverse to the debtor. Disinterestedness under section 101(14) is measured by the candidate's relationship to the debtor and the estate, not by whether the candidate's law firm has ever had any professional dealing with the individual serving as trustee in this case in unrelated matters. Likewise, Mr. Kiem's involvement as a professional in other cases

15

involving the trustee and his professionals has nothing to do with Sami Itshaik, Valley National Bank, or this estate. And finally, Mr. Kiem's past attorney-client relationship– that ended years before this case – with the law firm serving as counsel to the trustee does not disqualify him in any way from serving here. The Court concludes that none of these disclosed connections disqualify Mr. Kiem from serving as guardian ad litem here.

As for Mr. Olson, he discloses that (a) he previously served a 14-year term as a United States Bankruptcy Judge and that the trustee, his counsel, and counsel for Valley National Bank appeared before him on matters unrelated to this case; (b) he served as a mediator in two separate cases in which the trustee or his counsel represented a party to the mediation; and (c) his firm represents Mr. Barmat in his capacity as chapter 7 trustee in the case of *In re Jennifer Bradley Corporation*, Case No. 23-11971-SMG.[66]

While none of Mr. Olson's disclosed connections disqualify him either, the fact that his firm is still representing Mr. Barmat in another open (yet completely unrelated) matter, and the fact that his hourly rate is twice that of Mr. Kiem's, leads the Court to conclude – after carefully considering the qualifications of both candidates – that Mr. Kiem is the better choice for guardian ad litem in this case. Accordingly, it is

---

[66] This case is still open.

**ORDERED** that:

1.      Shaun Itshaik's objection to the appointment of either guardian ad litem candidate is **OVERRULED**, and his cross-motion to have himself appointed as guardian ad litem is **DENIED.**

2.      Tarek K. Kiem, Esq. is **APPOINTED** as guardian ad litem for debtor Sami Itshaik, pursuant to Federal Rule of Bankruptcy Procedure 1004.1(b)(2), to protect the interests of the debtor in this case.

3.      Mr. Kiem must keep contemporaneous time records of his fees and expenses, payment of which will be borne by Valley National Bank, after application and notice under 11 U.S.C. §§ 330 and 331, and Federal Rule of Bankruptcy Procedure 2016.

# # #

*Copies furnished to all parties of interest by Clerk of Court.*