**ORDERED in the Southern District of Florida on October 6, 2026.**

**Scott M. Grossman, Chief Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

SAMI ITSHAIK, Case No. 25-24251-SMG

Debtor. Chapter 7

_______________________________________/

**ORDER DENYING WITHOUT PREJUDICE TRUSTEE'S MOTION TO APPROVE SALE PROCEDURES FOR SALE OF REAL PROPERTY**

Before Sami Itshaik filed this chapter 7 bankruptcy case, Valley National Bank had obtained a judgment under New York's Uniform Voidable Transactions Act[1] ("UVTA") avoiding the transfers of two properties in Brooklyn, New York, from which the bank sought to collect approximately $7.18 million from Sami Itshaik. Chapter 7 trustee Marc Barmat has filed a motion to sell these properties.[2] The trustee argues that Valley National Bank's avoidance judgment vested full legal and equitable title

[1] N.Y. DEBT. & CRED. LAW §§ 270–281–a.
[2] Dkt. No. 167.

to the properties in Sami Itshaik.[3] According to the trustee, the properties are therefore property of the estate under 11 U.S.C. § 541(a) that the trustee can sell under 11 U.S.C. § 363(b)(1).[4]

Sami Itshaik's sons Amit Itshaik and Sharon "Shaun" Itshaik object to the trustee's motion.[5] Both sons contend that: (i) they are beneficiaries of trusts that hold title to these properties; (ii) Valley National Bank's judgment is personal to Valley National Bank and does not serve to re-vest fee title to the properties in Sami Itshaik; (iii) the properties are therefore not property of the estate; and (iv) the trustee cannot sell the properties.

The Court conducted an evidentiary hearing on the trustee's sale motion on September 9, 2026.[6] Upon consideration of the evidence and arguments presented at the hearing,[7] as well as the parties' briefs,[8] the Court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT.

By deeds dated November 24, 2003 and recorded on February 9, 2004, Esther Itshaik conveyed to Sami Itshaik title to the real property located at: (i) 1052 East 57th Street, Brooklyn, NY 11234 (the "1052 Property") and (ii) 1138 East 57th Street, Brooklyn, NY 11234 (the "1138 Property," together with the 1052 Property, the "Brooklyn Properties").[9] More than sixteen years later – on May 18, 2020, and May

[3] *Id.* at ¶ 40.
[4] *Id.*
[5] Dkt. No. 207.
[6] Dkt. No. 172.
[7] Dkt. Nos. 219, 220.
[8] Dkt. Nos. 167, 207.
[9] Dkt. Nos. 202-1, 202-2, 219.

19, 2020, respectively – two "correction deeds" (still dated November 24, 2003) that changed the name of the grantee for each property from Sami Itshaik, individually, to the 1052 East 57th Street Trust ("1052 Trust")[10] and the 1138 East 57th Street Trust ("1138 Trust"),[11] respectively, were recorded with the Office of the City Register of the City of New York.

On April 13, 2022, Valley National Bank obtained four New York state court judgments, totaling approximately $7.18 million, against Sami Itshaik in respect of loans he had guaranteed.[12] To collect on those judgments, Valley National Bank then commenced a separate action in New York state court seeking to avoid under New York's UVTA the transfers of the Brooklyn Properties by way of these "correction deeds." In the UVTA action, Valley National Bank asserted claims under New York Debtor & Creditor Law §§ 273(a)(1) and (a)(2),[13] 274,[14] and 276-a,[15] against Sami Itshaik, individually, the 1052 Trust, the 1138 Trust, and Sami Itshaik, as trustee.[16]

By Order and Judgment dated May 9, 2025, the Supreme Court of the State of New York entered judgment in favor of Valley National Bank on all its claims other than those under section 274.[17] The Order and Judgment declared the "correction deeds" to be "void and of no effect as to debts owed by defendant Sami Itshaik to

---

[10] Dkt. Nos. 202-9, at 40-43; 219.
[11] Dkt. Nos. 202-8, at 89-92; 219.
[12] *See* Claim No. 4-1.
[13] N.Y. DEBT. & CRED. LAW § 273. Transfer or obligation voidable as to present or future creditor.
[14] N.Y. DEBT. & CRED. LAW § 274. Transfer or obligation voidable as to present creditor.
[15] N.Y. DEBT. & CRED. LAW § 276-a. Attorney's fees in action or special proceeding under this article to avoid a transfer or obligation.
[16] Dkt. Nos. 202-3, 219.
[17] *Id.* The court dismissed the claims for relief under N.Y. DEBT. & CRED. LAW § 274.

plaintiff Valley National Bank."[18] It further ordered that the correction deeds are "deemed void, vacated and set aside," and directed the New York City Register, "upon the filing of a certified copy of this Judgment with the New York City Register and payment of any recording fees" to "mark its records accordingly."[19] The court further ordered that "plaintiff Valley National Bank may exercise any and all of its rights and remedies pursuant to New York Debtor and Creditor Law § 276, including levying the properties . . . or their proceeds."[20]

On December 2, 2025, Sami Itshaik filed a voluntary petition under chapter 7 of the Bankruptcy Code. On his bankruptcy schedules, he listed both the Brooklyn Properties as "on my name but not mine."[21]

## II. CONCLUSIONS OF LAW.

The filing of a bankruptcy case creates an estate consisting of all legal or equitable interests of the debtor in property as of the commencement of the case.[22] Bankruptcy Code section 363(b)(1) permits a trustee, after notice and a hearing, to sell property of a bankruptcy estate.[23] Under *Butner v. United States*, property interests are generally created and defined by state law.[24] To determine whether the trustee may sell the debtor's interests in the Brooklyn Properties, we therefore must first look to state law – in this case New York law – to determine what interests in the Brooklyn Properties debtor Sami Itshaik held as of the bankruptcy petition date.

[18] *Id.* at 4.
[19] *Id.*
[20] *Id.* at 5.
[21] Dkt. No. 21, at 4.
[22] 11 U.S.C. § 541(a)(1).
[23] 11 U.S.C. § 363(b)(1).
[24] 440 U.S. 48, 55 (1979).

Under New York law, conveying title to real property requires a written instrument, such as a deed,[25] that is subscribed by the grantor or its authorized agent[26] and that sets forth (1) a specific grantor, (2) a specific grantee, (3) a property description, (4) a recital of consideration, and (5) operative words of transfer.[27] To vest the estate and make the transfer effective, the executed deed must be delivered to and accepted by the grantee, or a third party acting on the grantee's behalf, with the parties having the intent to transfer title.[28] Although a deed must be duly acknowledged or attested by a witness to be fully effective against subsequent purchasers, recording the deed is not required to transfer title between the parties.[29] Failure to record, however, renders the conveyance void against subsequent good-faith purchasers for valuable consideration who record first.[30]

Before November 24, 2003, Esther Itshaik held title to the two Brooklyn Properties.[31] By deeds dated November 24, 2003 – both of which were recorded on February 9, 2004 – Esther Itshaik originally conveyed title to the respective Brooklyn Properties to Sami Itshaik.[32] As a result, as between Esther Itshaik and Sami Itshaik,

[25] *See Goodell v. Rosetti*, 52 A.D.3d 911, 913, 859 N.Y.S.2d 770, 772 (App. Div. 3d Dept. 2008).
[26] *See* N.Y. REAL PROP. LAW § 243; *Newburgh Realty II, LLC v. IPA Asset Mgmt., LLC*, 238 A.D.3d 887, 889, 235 N.Y.S.3d 105 (App. Div. 2d Dept. 2025).
[27] *See Maurice v. Maurice*, 131 A.D.3d 454, 456, 15 N.Y.S.3d 133 (App. Div. 2d Dept. 2015) (quoting *Cohen v. Cohen*, 188 A.D. 933, 933, 176 N.Y.S. 893 (App. Div. 2d Dept. 1919)); N.Y. GEN. OBLIG. LAW § 5-703.
[28] *See Goodell*, 52 A.D.3d at 913.
[29] *See id.*; *Newburgh Realty II*, 238 A.D.3d at 889.
[30] N.Y. REAL PROP. LAW § 291; *In re Heubusch*, 345 B.R. 49, 53 (Bankr. W.D.N.Y. 2006); *cf.* 11 U.S.C. § 544 (giving a bankruptcy trustee "strong-arm" powers to avoid certain transfers and liens that are voidable under applicable nonbankruptcy law, including the rights of a hypothetical judicial lien creditor (§ 544(a)(1)), execution creditor (§ 544(a)(2)), and bona fide purchaser of real property (§ 544(a)(3)), as well as certain actual creditors under applicable state law (§ 544(b)(1)).
[31] Dkt. Nos. 202-1, 202-2, 219.
[32] *Id.*

as of November 24, 2003, Sami Itshaik originally held title to both Brooklyn Properties.

The two "correction deeds" dated November 24, 2003 that were recorded on May 18 and 19, 2020, changed the name of the grantee for each property from Sami Itshaik, individually, to the 1052 Trust and the 1138 Trust, respectively.[33] Each "correction deed" identifies Esther Itshaik as grantor, identifies the respective trusts as grantees, describes the respective Brooklyn Properties, recites consideration, and uses operative language conveying the respective properties to the respective trusts.[34] Because the correction deeds contain the essential components of a conveyance – an identified grantor and grantee, a description of the property conveyed, consideration, and operative words of transfer – under New York law, as between Esther Itshaik, Sami Itshaik, and the respective trusts, the "correction deeds" served to convey fee interests in the Brooklyn Properties to the respective trusts. Thus, as of Sami Itshaik's December 2, 2025 bankruptcy petition date, under New York law the 1052 Trust and the 1138 Trust – and not Sami Itshaik, individually – held title to the 1052 Property and the 1138 Property, respectively.

That Valley National Bank obtained a judgment for itself avoiding the transfers effectuated by these "correction deeds" to the respective trusts does not alter this conclusion and does not serve to re-vest title to the Brooklyn Properties in Sami Itshaik.[35] The remedy Valley National Bank sought – and which the New York state

[33] Dkt. Nos. 202-8, at 89-92; 202-9, at 40-43; 219.
[34] *Id.*
[35] *See Schaefer v. Schaefer*, 795 N.W.2d 494, 498 (Iowa 2011) ("our fraudulent conveyance law [the Uniform Voidable Transactions Act] voids the transaction as between the creditors of the transferor

court granted – was relief under section 273(a) of New York's UVTA. Section 273(a) provides as follows:

> (a) A transfer made or obligation incurred by a debtor *is voidable as to a creditor* . . . if the debtor made the transfer or incurred the obligation:
>
> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.[36]

By its terms, section 273(a) makes a qualifying transfer "voidable as to a creditor"; it does not render the transfer void generally or return title to the transferor.[37] Once a creditor establishes that a transfer is voidable under section 273(a), the creditor's available remedies are then defined by section 276, which provides that:

> (a) In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in section two hundred seventy-seven of this article, may obtain:

---

and the transferee, but does not render the conveyance void as between the transferor and the transferee."); *Jessen v. Jessen*, 2002 WY 33, ¶ 10, 41 P.3d 543, 546 (Wyo. 2002) ("Courts have generally held that a fraudulent conveyance is valid as between the parties and that the conveyance is voidable only at the option of creditors or others within the protection of the statutes to the extent that is necessary to satisfy any debts. . . . Therefore, a conveyance that is fraudulent as to creditors, remains valid as between the parties to the transaction.") (citing 37 AM. JUR. 2D FRAUDULENT CONVEYANCES AND TRANSFERS §§ 89, 95 (2001)).

[36] N.Y. DEBT. & CRED. LAW § 273(a) (emphasis added).

[37] *See Jessen*, 41 P.3d at 546 ("The rationale behind this position is that a fraudulent transferor should not be allowed to benefit from his own misdeed.").

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee if available under applicable law; and

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(i) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(ii) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(iii) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.[38]

None of these remedies, however, serve to restore title to the transferor.[39]

Contrast the remedies available under the New York UVTA with those provided by the Bankruptcy Code when a bankruptcy trustee – acting on behalf of all creditors for the benefit of the estate – avoids a transfer. Bankruptcy Code sections 544, 545, 547, 548, 549, 553(b), or 724(a) all empower a trustee to avoid certain transfers. But the Bankruptcy Code also contains a separate recovery provision, 11 U.S.C. § 550, for which there is no analogue in the UVTA. Section 550(a) provides that:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, *the trustee may recover, for the benefit of the*

---

[38] N.Y. DEBT. & CRED. LAW § 276.

[39] *See Schaefer*, 795 N.W.2d at 498; *Jessen*, 41 P.3d at 546.

> *estate, the property transferred*, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.[40]

Thus, after a trustee avoids a transfer under one of the enumerated avoidance provisions, Bankruptcy Code section 550(a) permits the trustee to recover the transferred property, or its value, from specified transferees for the benefit of the estate.[41] The UVTA contains no comparable provision. Simply put, nothing in the UVTA serves to restore title to the transferor after a transfer is avoided.[42]

Accordingly, because Valley National Bank's judgment avoiding the two "correction deeds" did not serve to restore title to the Brooklyn Properties in Sami Itshaik, individually, the trustee has failed to prove that as of the petition date, Sami

---

[40] 11 U.S.C. § 550(a) (emphasis added).

[41] *See also* 11 U.S.C. § 541(a)(3) (property of the estate includes "[a]ny interest in property that the trustee recovers under section . . . 550.").

[42] *See Schaefer*, 795 N.W.2d at 498; *Jessen*, 41 P.3d at 546. The Supplementary Practice Commentaries to New York's UVTA section 276 support this conclusion as well:

> Section 276(a)(1) permits the avoidance of the transfer made or obligation incurred only to the extent necessary to satisfy the creditor's claim. The basic relief is to unwind the voidable transaction by cancelling the obligation or reversing the transfer, subject to the limitations in Section 277. *The transaction is avoided only to the extent necessary to satisfy the claim of the creditor bringing the challenge.* This does not change existing law.
>
> *The rule is different when the claim is brought in a bankruptcy case under Bankruptcy Code Section 544(b) where*, under the rule of *Moore v. Bay*, 284 U.S. 4 (1931) if a transfer is voidable by one creditor to the extent of its claim, *the transfer may* [be] *avoided in its entirety for the benefit of all creditors* of that debtor in the bankruptcy case.

James Gadsden & Alan Kolod, Supplementary Practice Commentaries, MCKINNEY'S N.Y. DEBT. & CRED. LAW § 276 (2020) (emphasis added).

Itshaik owned a fee interest in either of the Brooklyn Properties that the trustee can sell under 11 U.S.C. § 363(b)(1).

For the foregoing reasons, it is **ORDERED** that the trustee's *Motion to: (I) Approve Sale Procedures for Sale of Real Property; (II) Waive 14-Day Stay Under Bankruptcy Rule 6004(h); and (III) Request for Evidentiary Hearing*[43] is **DENIED**, without prejudice to the trustee commencing an adversary proceeding (subject to any defenses any defendant may have) to avoid the transfers of the 1052 Property to the 1052 Trust and the 1138 Property to the 1138 Trust, respectively, and to recover those properties for the benefit of the estate, and then renewing his request if successful in that action.

# # #

*Attorney Jason Rigoli is directed to serve a copy of this Order on all creditors and parties in interest, and to file a certificate of service under Local Rule 9036-2.*

[43] Dkt. No.167.